IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| **JAIME RIOS RODRIGUEZ,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 6:26-cv-03730-MDH** |
| | ) | |
| **JASON JOHNSON, *et. al.*,** | ) | |
| | ) | |
| **Respondents.** | ) | |

## ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

Petitioner has been detained by the Department of Homeland Security ("DHS") and parole has been terminated without prior written notice. Pending is his Verified Petition for Writ of Habeas Corpus in which he argues the Due Process Clause requires that he be released or granted a hearing. The Court agrees with Petitioner's constitutional arguments, and on that basis, it concludes the Petition for Writ of Habeas Corpus should be **GRANTED**.

## BACKGROUND

Jaime Rios Rodriguez, a native and citizen of Nicaragua, has been present in the United States since March 29, 2022. He, his wife, and their son fled their home country after experiencing persistent political persecution. The family entered through the Rio Grande Valley and was apprehended by U.S. Customs and Border Patrol agents who took them to a processing facility in Donna, Texas. DHS decided to release Mr. Rios Rodriguez on parole as part of the Alternate to Detention as a Condition of Parole program. DHS never issued him a Notice to Appear; instead, it required him to attend periodic check-ins with Immigration and Customs Enforcement ("ICE"). Mr. Rios Rodriguez did this faithfully, never violating a condition of his parole. He then timely

filed an Application for Asylum and for Withholding of Removal. He has no criminal history whatsoever.

On January 22, 2026, Mr. Rios Rodriguez appeared for a scheduled check-in with ICE. Instead of allowing him to return home to his wife and child, ICE officers arrested him and served him a Notice to Appear. They did not allege that he had violated his parole or become a danger or flight risk. They transferred him to a jail in Ste. Genevieve, Missouri, before moving him to Greene County Jail in Springfield, Missouri, where he remains in custody today.

On April 13, 2026, an Immigration Judge granted Mr. Rios Rodriguez's application for asylum. However, ICE did not release him. Instead, it filed a Notice of Intent to Appeal the decision and—twenty-nine days later—a Notice of Appeal, which triggered an automatic ninety-day stay of the order. *See* 8 C.F.R. § 1003.19(i)(2); § 1003.6(c)(4). An Appellate Immigration Judge granted DHS's motion for a discretionary stay of the bond order. *See* 8 C.F.R. section 1003.19(i)(1); 8 C.F.R. § 1003.6(c)(5). There is no opportunity for a detainee to be heard regarding either stay.

For 200 days, Petitioner has remained in custody despite being granted asylum by an Immigration Judge.

Petitioner brought this proceeding, seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2241, against (1) the Greene County Sheriff, (2) the secretary of DHS, (3) the acting assistant field office director of ICE Kansas City, (4) DHS, (5) the United States Attorney General, and (6) the Executive Office for Immigration Review.[1] He asserts his detention violates the Immigration

[1] The individual Respondents are sued in their official capacities only. Petitioner's Petition lists Jason Johnson as a party by virtue of his administration of the Greene County Jail. The Court construes the proper party holding Petitioner in custody as the Department of Homeland Security through Immigration and Customs Enforcement. As DHS and ICE are utilizing the Greene County Jail to hold Petitioner and other detainees, the Court expects its ruling to apply to the Government and those aiding the Government regarding this specific case.

Nationality Act (INA) and the Due Process Clause.[2] Respondents argue that Petitioner's due process rights are not being violated. The Court resolves the parties' arguments below.

## DISCUSSION

### I. Jurisdiction

Section 1226(e) provides that "[t]he Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole." 8 U.S.C. § 12226(e). Petitioner's claims are not challenges to "discretionary" immigration decisions—they are constitutional challenges to prolonged detention in the face of the IJ's order granting Petitioner asylum after a hearing. Furthermore, they are constitutional challenges to a prolonged detention during which Petitioner has not been provided any opportunity to be heard on the matter. Agencies have no "discretion" to violate the Constitution. A decision that deprives a detainee of liberty in violation of due process is not a "discretionary judgment" protected from review—it is an unlawful act subject to judicial correction. Petitioner is not challenging a discretionary immigration decision, so the above provision does not deprive the Court of jurisdiction. This Court concludes it has jurisdiction over Petitioner's habeas petition.

### II. The Due Process Clause

[2] The Court recognizes Petitioner's clarification that he advances his statutory argument for preservation purposes only in light of *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026). Because this Court reaches its conclusion based on Petitioner's due process argument, it does not reach his statutory one.

Petitioner alleges his continued detention violates the Due Process Clause of the Fifth Amendment. Respondents argue that the discretionary stay is constitutional because it is "brief and finite."

Petitioner has no criminal history of any kind. The Immigration Judge, after a dedicated hearing, made an individualized determination that Petitioner should be granted asylum. The Immigration Judge did not find any basis for continued detention. The Government has already litigated and lost.

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Immigration detention is subject to review under the Due Process Clause, notwithstanding its administrative nature. *Sanchez v. LaRose*, 2025 WL 2270629, at *3 (S.D. Cal. Sep. 26, 2025) (citing *Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017) ("the government's discretion to incarcerate noncitizens is always constrained by the requirements of due process.")). "When the government grants an alien parole into the country, it creates a liberty interest intimately tied to freedom from imprisonment." *Id.* (citing *Alegria Palma v. LaRose*, 3:25-cv-01942, ECF No. 14, at 6 (S.D. Cal. Aug. 11, 2025) (finding that "continued freedom after release on own recognizance" was a core liberty interest)).

Substantive Due Process

The substantive due process framework requires that any deprivation of liberty bear a reasonable relationship to a legitimate governmental purpose. *Zadvydas*, 533 U.S. at 690. The Government's interest in seeking another opportunity to prove what it could not prove once already is not a constitutionally sufficient justification for 200 days of incarceration of a noncitizen who

has never been convicted of anything and complied with every condition of his parole. Petitioner's continued detention violates substantive due process.

Procedural Due Process

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "A procedural due process claim has two elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *Sanchez*, 2025 WL 2770629, at *3 (citing *Miranda v. City of Casa Grande*, 15 F.4th 1219, 1225 (9th Cir. 2021) (internal quotations omitted)).

Here, Petitioner was deprived of his liberty interest in his grant of asylum when Respondents invoked the ninety-day automatic stay, and later the indefinite discretionary stay, after an Immigration Judge made an individualized determination pursuant to a dedicated hearing that Petitioner meets the requirements for asylee status. The Court disagrees with Respondents' assertion that the *Mathews* factors as applied to this case show that "the procedures provided to [Petitioner] are adequate." Under *Mathews*,

> identification of the specific dictates of due process generally requires consideration of three distinct factors: *First*, the private interest that will be affected by the official action; *second*, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and *finally*, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335 (emphasis added).

*Mathews* Factors

Undoubtedly, the private interest at stake here "is the most elemental of liberty interests—the interest in being free from physical detention[.]" *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). Petitioner has been held in a county jail—in conditions indistinguishable from criminal incarceration—since January 22, 2026. He is separated from his wife and child. He cannot maintain employment. He cannot participate as a member of his community. Every day that passes under this unlawful detention is a day that cannot be recovered. *See Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020) (first *Mathews* factor strongly satisfied where the petitioner was "locked up in jail" and "could not maintain employment or see his family or friends or others outside normal visiting hours").

The risk of erroneous deprivation of Petitioner's liberty is high where procedural principles do not include any standards for the agency official to satisfy and operate as an appeal of right. *See Günaydin v. Trump*, 784 F. Supp. 3d 1175, 1188 (D. Minn. 2025) (second *Mathews* favor strongly satisfied where the petitioner had succeeded twice in immigration court and Respondents invoked automatic-stay regulation with appeal of a bond order). The automatic stay regulation, 8 C.F.R. section 1003.19(i)(2), is triggered by the filing of a single form—EOIR-43—with no requirement that DHS demonstrate that the Immigration Judge's bond determination was erroneous. Petitioner cannot oppose it. There is no hearing. There is no judicial review of the stay decision itself. There is no opportunity for Petitioner to contest it in any forum before he is deprived of the liberty the Immigration Judge granted. The same is true of the discretionary stay. The Court agrees with the *Günaydin* court that "[i]n our society[,] liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *Id.* (quoting *United States v. Salerno*, 481 U.S. 739, 755 (1987)).

Traditionally, to be granted a stay on a court order, "the party seeking the stay must make a strong showing that they are likely to ultimately prevail; in making this showing, '[i]t is not enough that the chance of success on the merits be better than negligible.'" *Id.* (citation omitted). No such requirement is included in the discretionary stay regulation at issue in this case. The regulation does not provide Petitioner any opportunity to be heard before, during, or after the stay is invoked. This presents a blatant absence of procedural due process. It "turns these well-established procedural principles on their heads and carries a significant risk of erroneous deprivation." *Id.* at 1189.

The final factor directs the Court to weigh the private interests at stake and the risk of erroneous deprivation of those interests against Respondents' interests in persisting with the regulation, including the fiscal and administrative burdens of an additional or substitute procedural requirement. *Mathews*, 424 U.S. at 335. Here, the Government's interest in continued detention under the discretionary stay regulation is weak. An Immigration Judge has already found no basis for continued detention. The Government does not identify a single risk that the Immigration Judge failed to consider or a single fact that has changed since the asylum hearing. The discretionary stay is not being used to prevent genuine irreparable harm to the Government—it is being used to ensure that a noncitizen who won remains in custody until DHS gets another chance to make its case.

In sum, the *Mathews* factors weigh in favor of Petitioner, and the Court finds that his continued detention violates his due process rights.

## CONCLUSION

The Court concludes Petitioner has been deprived of his Due Process rights. Accordingly, the Petition for Writ of Habeas Corpus is **GRANTED** as follows.

1. Respondents are **ORDERED** to immediately release Petitioner from custody.

2. Respondents shall make accommodations available for Petitioner until such time as arrangements can be made for Petitioner to be returned to the location of arrest or other location agreed by the parties.

3. Petitioner shall promptly report to the Court any failure to comply with this Order by Respondent.

4. Petitioner may submit an application for fees under the EAJA within thirty days of the entry of final judgment.

5. It is **FURTHER ORDERED** that Respondents are enjoined from relocating Petitioner outside the jurisdiction of this Court prior to compliance with this Order.

**IT IS SO ORDERED**.

DATED: October 30, 2026

*/s/ Douglas Harpool*
**DOUGLAS HARPOOL**
**UNITED STATES DISTRICT JUDGE**